UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DEBORAH LEVINSON <u>et al.</u>,
individually and on behalf of
all others similarly situated,



                    Plaintiffs,

            -against-                        02 Civ. 2222 (DAB)
                                             <u>MEMORANDUM & ORDER</u>

ABOUT.COM, INC.,
                    Defendant,
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     In their Complaint Plaintiffs in this suit alleged claims

against Defendant About.com ("About") and its parent, Primedia,

Inc. ("Primedia"), under both the Fair Labor Standards Act (Count

I) and Articles 6 and 19 of New York Labor Law (Count II).  They

also asserted a claim against About and Primedia for breach of

contract (Count III).  Plaintiffs further asserted two claims for

tortious interference with contractual relations, one against

About's former CEO, Defendant Scott Kurnit ("Kurnit") (Count IV),

and the other against Primedia (Count V).  Finally, Plaintiff

Therese Jansen brought a separate Fair Labor Standards Act claim

for discharging her in retaliation for complaining about unpaid

back wages (Count VI).

     On August 9, 2007 the Court granted in part and denied in

part Defendants' Motion for Summary Judgment.  The Court granted

summary judgment for the Defendants on the issue of whether

                              1

Primedia may be held liable for any asserted claims, including
tortious interference with contract, breach of contract, the
claim pursuant to FLSA, and the claim pursuant to Articles 6 and
19 of New York Labor Law; the Court also granted summary judgment
for Defendants on the issue of whether Scott Kurnit may be held
liable for tortious interference with contract.  In addition, the
Court granted summary judgment for Defendants against FLSA
Plaintiffs who worked outside the United States during the times
relevant to this suit, and against Plaintiff Therese Jansen on
her FLSA retaliatory discharge claim and on her purported New
York Labor Law retaliatory discharge claim.  Finally, the Court
granted summary judgment for the Plaintiff on the issue of how to
calculate each Guide's share of the Revenue Pool.  Therefore, the
remaining claims at this stage are the contract claims, New York
State Labor Law claims, and FLSA claims (of Plaintiffs who worked
inside the United States at times relevant to this suit) against
Defendant About.com.

Now before the Court is Plaintiffs' Motion for Class
Certification.  The history of this motion dates to November 6,
2003, when Judge Constance Baker Motley denied without prejudice
Plaintiffs' Motion to Circulate a Notice of Pendency and Consent
to Join.  Judge Motley's Order stated that: "Should further
discovery disclose additional facts to support Plaintiffs'

2

application, they may renew it upon a proper showing." (Order, Nov. 6, 2003.)[1]  Then, on September 19, 2005, after receiving requests from both parties to file motions, this Court Ordered that Plaintiffs' motion for class certification be held in abeyance until the "employee/independent contractor" issue is resolved through Defendants' summary judgment motion.  As already noted, the Court ruled on that motion on August 9, 2007; however, the Parties did not brief, and the Court did not decide the employee/independent contractor issue. (Aug. 9, 2007 Order at 36.)  However, the Court permitted Plaintiffs to renew their motion for class certification.

A Motion for Class Certification was filed on January 23, 2008; Defendant filed its Opposition on March 11, 2008, and then, after extensive time was afforded the parties (at their request) to facilitate the disposition of the case, Plaintiffs' Reply was filed on September 2, 2008.  Following that Reply, on September 11, 2008, Defendant wrote asking for permission to move to strike portions of the Reply because Plaintiffs had submitted "two untimely and non-responsive expert declarations" and to submit a "brief surreply."  (Sept. 11, 2008, Whitman Ltr. at 1.)  The

---

[1]    The case was originally assigned to this Court, then transferred to Judge Motley on July 31, 2003, then transferred back to this Court on June 30, 2005.

3

Court granted Defendant leave to submit those additional papers on September 17, 2008 and they were filed September 26, 2008. On October 30, 2009 Plaintiffs opposed the motion to strike, and on November 14, 2008 Defendant replied.

For the reasons set forth herein, Plaintiffs' Motion for Class Certification is GRANTED, and Defendant's Motion to Strike Plaintiffs' "untimely" expert reports is DENIED. As set forth in this Order, brief expert discovery is Ordered. Further, Plaintiffs are GRANTED leave to file their motion for partial summary judgment proposed in the December 17, 2007 Letter of Leon Greenberg.[2] Lastly, Plantiffs' Counsel is appointed Lead Counsel for the class.

## I. BACKGROUND

The relevant factual background is set forth in this Court's August 9, 2007 Order.

---

[2] Further, Defendant's may raise the issue of the weight to be given each Guide's individual page views in response to Plaintiffs' motion. (Def. Opp. Mot. at 9-10.)

4

## II. DISCUSSION

### A. Class Certification

The primary issue before the Court is Plaintiffs' Motion for
Class Certification.   The Plaintiffs only seek certification of
their breach of contract claims and propose the following class
definition: "Persons who 1) Entered into a '1997 contract' and or
a '1999 contract' ('the contracts') with the defendant (or its
predecessors) to 'build, maintain and enhance' a specified
Internet website for the defendant, and; 2) were denied by
defendants pay of the specified percentage of defendant's net
advertising revenue and/or net transaction revenue and/or net
syndication revenue promised by such contract."   (Pl. Mem. of Law
at 2.)

The Second Circuit has provided the following instructions
to district courts examining class certification motions:

> (1) a district judge may certify a class only after
> making determinations that each of the Rule 23
> requirements has been met; (2) such determinations can
> be made only if the judge resolves factual disputes
> relevant to each Rule 23 requirement and finds that
> whatever underlying facts are relevant to a particular
> Rule 23 requirement have been established and is
> persuaded to rule, based on the relevant facts and the
> applicable legal standard, that the requirement is
> met; (3) the obligation to make such determinations is
> not lessened by overlap between a Rule 23 requirement
> and a merits issue, even a merits issue that is
> identical with a Rule 23 requirement; (4) in making
> such determinations, a district judge should not
> assess any aspect of the merits unrelated to a Rule 23

requirement; and (5) a district judge has ample
discretion to circumscribe both the extent of
discovery concerning Rule 23 requirements and the
extent of a hearing to determine whether such
requirements are met in order to assure that a class
certification motion does not become a pretext for a
partial trial of the merits.

In re Initial Public Offering Securities Litigation ("IPO

Litigation"), 471 F.3d 24, 41 (2d Cir. 2006).


1. Class Certification "Prerequisites"

A district court may not grant class certification without

making a determination that all of the Rule 23 requirements are

met.  IPO Litigation, 471 F.3d at 40.  The Federal Rules of Civil

Procedure lay out the following "prerequisites" for class

certification:

(1) the class is so numerous that joinder of all
members is impracticable; (2) there are questions of
law or fact common to the class; (3) the claims or
defenses of the representative parties are typical of
the claims or defenses of the class; and (4) the
representative parties will fairly and adequately
protect the interests of the class.

Fed. R. Civ. P. 23(a).


a.    Numerosity

The Plaintiffs allege that "the defendant has produced

records indicating 1519 different persons worked for it as Guides

and would be members of the proposed class."  (Pl. Mem. of Law at

6

9.)  Plaintiffs have submitted documentation supporting that calculation, which the Defendant does not question.  (Id.) Further, Defendant does not dispute that numerosity is satisfied here.

Therefore, the Court makes a factual determination that the class could consist of over fifteen hundred people.  The Second Circuit has held that numerosity is presumed at a level of 40 members.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Consequently, numerosity is satisfied here.


        b.    Commonality and Typicality

The Plaintiffs allege that "[t]he breach of contract claims of the class members present identical questions for resolution (the only difference among the class members' claims are the scope of their damages)."  (Pl. Mem. of Law at 10.)  Further, Plaintiffs state the "named plaintiffs, like the rest of the class members, worked for the defendant under the contracts at issue."  (Id. at 12.)  Defendants state that "Plaintiffs arguably may satisfy the commonality and typicality requirements inasmuch as they all were subject to the 1997 or 1999 contracts."  (Def. Opp. Mem. of Law at 9.)

"The commonality requirement is met if plaintiffs'

7

grievances share a common question of law or of fact." <u>Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.</u>, 504 F.3d 229, 245 (2d Cir. 2007) (<u>citing Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam)). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Id.</u> (<u>Citing Robinson v. Metro-N. Commuter R.R. Co.</u>, 267 F.3d 147, 155 (2d Cir. 2001)).

The Court determines that the class definition, inasmuch as it requires that class members "entered into a '1997 contract' and/or a '1999 contract'" and "were denied by defendants pay of the specified percentage of defendant's net advertising revenue and/or net transaction revenue and/or net syndication revenue promised by such contract," necessarily presents a group of Plaintiffs with common issues of fact. Likewise, the Court determines that the claims and defenses of the named Plaintiffs, which are pursuant to those same contracts, are typical of the class.

c.   Representative Will Fairly and Adequately Protect
the Interests of the Class

"Adequacy is twofold: the proposed class representative must

have an interest in vigorously pursuing the claims of the class,

and must have no interests antagonistic to the interests of other

class members." Denney v. Deutsche Bank AG, 443 F.3d 253, 268

(2d Cir. 2006) (citing Baffa v. Donaldson, Lufkin & Jenrette Sec.

Corp., 222 F.3d 52, 60 (2d Cir. 2000); Robinson v. Metro-North

Commuter R.R. Co., 267 F.3d 147, 170 (2d Cir. 2001)). Further,

"[a] conflict or potential conflict alone will not, however,

necessarily defeat class certification-the conflict must be

'fundamental.'" Denney, 443 F.3d at 268. The Defendant argues

that "based on the Court's approach to determining a Guide's

proportion of NAR [About's net advertising revenue], the

likelihood that Guides will oppose each other is substantial."

(Def. Opp. Mem. of Law at 14.)[3] The Court previously granted

summary judgment for Plaintiffs on the issue of this

calculation.[4] Defendant's point is essentially that because some

_____

[3] The Defendants also alleged that Plaintiffs' Counsel is
not adequate to protect the interests of the class. Because the
adequacy of class counsel properly relates to Rule 23(g) that
argument is discussed infra at II.C.

[4] The Court held that: "The Agreements state that the
Guides' portions of the Revenue Pool are to be 'calculated based
on the number of page views recorded on the [Guide's] site as
compared with the number of page views for all sites of [About].'

Plaintiffs could potentially recover more based on Defendant's
interpretation of the contracts, rather than the Court's finding,
there is conflict between Plaintiffs rendering the named
Plaintiffs inadequate.

As an initial matter, Defendant has provided no evidence
tending to show that the named Plaintiffs would benefit
differently under any particular theory of page views in the
Revenue Pool.  Further, as discussed supra n. 2, the Court will
allow Defendant to make arguments asking the Court to revisit its
earlier determination about the proper weight to be given page
views, when Defendant opposes Plaintiff's motion for partial
summary judgment.  However, for the purposes of this
certification motion the Court again makes the determination that
contract language is unambiguous, and that each Guide's portion
of the Revenue Pool should be equal to the percentage of views of
all of About.com's sites that were page views of that particular

---

(1997 Agreements ¶ 3; 1999 Agreements ¶ 3.)...Defendants contend
that the Agreements do not intend for each visit to a Guide's
site to be counted the same as visits to other Guides' sites.
(Defs.' Reply Mem. of Law at 7.)...Defendants argue that where
the Agreements refer to 'page views', they refer not just to
'number' of page views, but also to the 'mix' of page views.
(Defs.' Reply Mem. of Law at 7.)...There is no mention of 'mix of
page views' or 'value of page views' in the Agreements.  The
formula prescribed is clear on its face and shall not be muddied
by Defendants' tautologies.  Each Guide's portion of the Revenue
Pool should be equal to the percentage of views of all of
About.com's sites that were page views of that particular Guide's
site or sites." (Aug. 9. 2007 Order at 23-25.)

Guide's site or sites.  IPO Litigation, 471 F.3d at 41 (noting
"the determination as to a Rule 23 requirement is made only for
purposes of class certification and is not binding on the trier
of facts, even if that trier is the class certification judge.")
Therefore, there is no conflict between the Plaintiffs.

However, even assuming arguendo that Defendant succeeds in
convincing the Court that page views should be weighted
differently for purposes of calculating each Guide's percentage
of the Revenue Pool, that would still not render the named
Plaintiffs in this action inadequate to protect the interests of
the class.  Defendants speculative argument about the weight of
page views cannot defeat class certification, where Defendants
have not shown a meaningful difference in the amount of recovery
between Plaintiffs under the alternate theories.  The Court
determines that any potential for conflict among class members
is, therefore, not "fundamental."

2. Additional Requirements of Rule 23(b)

A Class Action may be maintained only if the Rule 23(a)
prerequisites are satisfied and if one of the elements of Rule
23(b) is also satisfied.  Plaintiffs here allege that their
proposed class meets the criteria of Rule 23(b)(3) which states:

The court finds that the questions of law or fact

11

common to class members predominate over any questions
affecting only individual members, and that a class
action is superior to other available methods for
fairly and efficiently adjudicating the controversy.
The matters pertinent to these findings include:

(A)   the class members' interests in individually
      controlling the prosecution or defense of
      separate actions;
(B)   the extent and nature of any litigation
      concerning the controversy already begun by or
      against class members;
(C)   the desirability or undesirability of
      concentrating the litigation of the claims in the
      particular forum; and
(D)   the likely difficulties in managing a class
      action.

Fed. R. Civ. P. 23(b).

Defendants here argue that "based on the individualized
nature of [the Plaintiffs] damages [] they do not satisfy Rule
23(b)(3)'s predominance requirement" that "[a]ll of these
determinations would vary individually by Plaintiff." (Def. Opp.
Mem. of Law at 9, 11.) However, the law requires only that
common questions predominate, not that all questions are common
to all potential class members. Fed. R. Civ. P. 23(b). The fact
that damages require individual computations according to each
Plaintiff's particular facts, does not justify failing to certify
a class action. See In re Visa Check/MasterMoney Antitrust
Litigation, 280 F.3d 124, 139-140 (2d Cir. 2001) rev'd on other
grounds IPO Litigation (noting that "Common issues may

12

predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues" and finding that "District courts have correctly recognized that any other rule would eliminate antitrust class actions."); see also Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."); Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. 1968) rev'd on other grounds IPO Litigation (finding the fact that "there would be differences in computation of damages among class members would not justify dismissal of a class action.").

After reviewing Plaintiffs' submissions the Court determines that common questions predominate over individual ones. Therefore, Plaintiffs satisfy Rule 23, and the Court hereby certifies Plaintiffs' contract claims as a class action.


B. Defendant's Motion to Strike

Defendant argues that because of procedural failings Plaintiffs' expert witnesses will be unable to testify. As an initial matter, the Court notes that this issue is irrelevant the

13

to the determination of class certification because, even without any expert witness testimony, the requisite elements of Rule 23 have been satisfied.

However, to clarify the record going forward, the Court will recreate the discovery timeline to the extent rulings have already been made. Defendants correctly point out that Judge Gorenstein issued scheduling order in this case on July 2, 2004 which set out the following dates: 1) close of fact discovery on October 15, 2004; 2) Plaintiffs' motion for class certification shall be served and filed on or before November 15, 2004 (Defendants Opposition December 13, 2004 and reply papers on or beofre December 27, 2004); 3) expert reports by January 14, 2005 and expert depositions completed by March 7, 2005. (J. Gorenstein Order, July 2, 2004). Judge Gorenstein also set out subsequent dates for pre-trial motions. (Id.) Then, in response to a letter from Plaintiffs requesting an extension of discovery Judge Gorenstein ruled on October 29, 2004, that: "neither party may serve any new discovery request, other than notices of deposition"; "Depositions may be conducted as long as they are completed by 1/15/05"; and, "[t]here will be no discovery permitted except as set forth in this Order". (Dkt. No. 42, Order.) This extension plainly did apply to expert discovery which was not yet scheduled to commence.

On March 2, 2005, Judge Gorenstein issued a new Scheduling Order which set out dates for Plaintiffs to file a Motion to Compel.  That motion was briefed, and Plaintiff's Motion was granted in part and denied in part on March 31, 2005.  (Dkt. No. 53, Tr., Mar. 28, 2005 Hearing.)  Then on May 4, 2005, Judge Gorenstein held another conference, based on Plaintiffs' request for additional time, in which he criticized Plaintiffs' counsel for "a lot of deficiencies" but ultimately decided that because Defendants had not yet produced certain financial documents, discovery was extended "solely for the purpose of conducting depositions."  (Dkt. No. 56, Tr., May 4, 2005 at 5.)

At this stage in the proceedings, it would have been reasonable for Plaintiffs to have assumed that expert discovery still had not commenced.  The extensions granted by Judge Gorenstein could have been understood to apply only to fact discovery given that (by the initial Scheduling Order) expert discovery was meant to follow a class certification motion.

On June 30, 2005, the case was transferred from Judge Motley back to this Court.  On August 11, 2005 Judge Gorenstein Ordered the Parties to submit letters to this Court in accordance with Individual Practice Rules requiring the submission of letters prior to the filing of a new motion.  On September 19, 2005, after receiving requests from both parties to file motions, this

15

Court Ordered that: Defendants' request to move for summary judgment be granted, Plaintiffs' request to cross-move for summary judgment denied, and Plaintiffs' motion for class certification held in abeyance until the "employee/independent contractor" issue is resolved through Defendants' summary judgment motion.  As already noted the Court ruled on that Summary Judgment motion on August 9, 2007.

Therefore, the Court cannot agree with Defendant that the expert affidavits attached to Plaintiffs' Reply must be struck. A plausible interpretation of the history of this case would suggest that expert discovery has not yet commenced given that the filing of the Class Certification motion was held in abeyance by this Court.  Plaintiffs' counsel could reasonably have assumed that expert discovery was likewise held in abeyance.  In any event, because the Court is going to permit Plaintiffs to move for partial summary judgment, and because any trial is (consequently) far from imminent, there is no harm to Defendant allowing expert discovery to proceed at this time.  Indeed, Defendant benefitted, as it was allowed to make all of its motions, for summary judgment and in opposition to class certification, prior to conducting expert discovery.

Therefore, the Parties shall have thirty days from the date of this Order to serve any additional expert reports.  Parties

16

shall have sixty days from the date of this Order to conduct any and all expert depositions.  There SHALL BE NO EXTENSIONS. Parties should be mindful that any delay, by either side, will not be tolerated by this Court.  Failure to adhere to any of these deadlines SHALL RESULT in a waiver of additional discovery.


    C. Adequacy of Class Counsel, Rule 23(g)

    Finally, Defendant challenges Plaintiffs' Counsel's adequacy to represent the interests of the class.  Rule 23(g) states that the Court must consider the following four criteria

> i) the work counsel has done in identifying or
> investigating potential claims in the action;
> (ii) counsel's experience in handling class actions,
> other complex litigation, and the types of claims
> asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to
> representing the class;

Fed. R. Civ. P. 23(g).

    The crux of Defendant's argument against Plaintiffs' counsel's appointment is that Plaintiff's counsel failed to adhere to Judge Gorenstein's discovery deadline and have thereby waived expert discovery.  As discussed <u>supra</u> II.B. that argument is without merit.

    Further, the Court has considered the elements of Rule 23(g) and Plaintiffs' counsel's submissions (Pl. Mem. of Law Ex. G) and

determines that appointment of Leon Greenberg and Michael Shen as class counsel is appropriate.

### III. CONCLUSION

The following group is hereby Certified as a Class Action as to Plaintiffs' contract claims: "Persons who 1) Entered into a '1997 contract' and or a '1999 contract' ('the contracts') with the defendant (or its predecessors) to 'build, maintain and enhance' a specified Internet website for the defendant, and; 2) were denied by defendants pay of the specified percentage of defendant's net advertising revenue and/or net transaction revenue and/pr net syndication revenue promised by such contract."

Leon Greenberg and Michael Shen are HEREBY appointed class counsel.

Parties shall have thirty (30) days from the date of this Order to serve any additional expert reports. Parties shall have sixty (60) days from the date of this Order to conduct any and all expert depositions. There SHALL BE NO EXTENSIONS.

Within ninety-days (90) of the date of this Order Plaintiff SHALL FILE their motion for partial summary judgment. Defendant shall Oppose within thirty (30) days of being served with Plaintiffs' motion. In their papers Defendant may reargue those

18

issues for which Plaintiff has already been granted summary judgment.   Plaintiff SHALL FILE their Reply within fifteen (15) days of being served with Defendant's Motion.   There SHALL BE NO EXTENSIONS.

Failure to adhere to any of these deadlines SHALL RESULT in a waiver of additional discovery and/or motion practice.

SO ORDERED.

Dated:     New York, New York
           April 13, 2009


                                    _Deborah A. Batts_
                                      Deborah A. Batts
                                 United States District Judge


19